State, Central Railroad of New Jersey, pros., v. City of Elizabeth.

---

THE STATE, CENTRAL RAILROAD OF NEW JERSEY, PROSECUTORS, v. CITY OF ELIZABETH.

1. Where streets are dedicated by the owners of land, by mapping and conveying with reference thereto, and opening the same to public use, the common council of Elizabeth may, under their charter, accept such dedication by resolution, without notice to the owners or their grantees, as there can be no claim for damages, and no additional burden is put on the land.

2. The commissioners to lay out streets, &c., in Elizabeth, under the act of March 13th, 1867, by making no reference, on their map or otherwise, to the part of Wall street between Trumbull and Division streets, did not adjudge that it should be closed. If such was their intention it should have been marked, as other closed streets were, on the map.

3. Upon application in writing, by persons aggrieved by the action of the commissioners under the repealing act of March 31st, 1869, the common council could pass a resolution to accept the dedication, and open that part of Wall street as a public street.

4. Where a dedicated street is opened over a railroad obliquely, the court will not interfere with the discretion of the common council in

accepting the same and ordering work to be done thereon, where they are acting within their charter, and it does not appear that the crossing is unnecessary, and a dangerous obstruction to the company's right of travel.

On *certiorari* to remove proceedings of the city council of Elizabeth, relative to the opening and paving of certain streets in said city.

Argued at November Term, 1871, before Justices BEDLE, DALRIMPLE and SCUDDER.

For prosecutors, *Magie & Cross* and *F. T. Frelinghuysen.*

For defendant, *Jos. Alward* and *C. Parker.*

SCUDDER, J.   The writ of *certiorari* was issued to return the resolutions, ordinances and proceedings of the city council of Elizabeth, relative to opening and paving Wall street, or Magnolia avenue, between Seventh street and Division street.   The maps and deeds marked as exhibits in the cause, and the testimony of witnesses, present the facts of the case, which will be only briefly stated.

Wall street was never laid out and opened by public authority, but Earnest L. Meyer, the city surveyor of Elizabeth, testifies that somewhere between ten and fifteen years ago he made a map of Wetmore's addition to Elizabethport, which was intended to be filed in the register's office, and he saw the map in that office five or six years ago.

There is no record or other notice of said street in the clerk's or register's office, except the reference made to this map and the streets upon it, including Wall street, and the lots plotted upon it, contained in several deeds offered in evidence.   Some of these deeds are part of the prosecutors' title to land lying in that vicinity.   There is no evidence that there are any buildings on Wall street, between Seventh and Division streets.   The land over which it runs is low and bushy in places, and is thrown out to common.   Although

it has been traveled several years, and used, no repairs have been put upon it, and it has never been worked. Luke H. Higgins, who has been street commissioner at different times from 1850 to 1870, says he never had any work done on it by public authority, and that only once, at the request of one of the officers of the fair grounds, he did some little work and repairs for the purposes of the agricultural fair. It will be seen by this statement that there is some proof of dedication by mapping and deeding, but there is no proof of acceptance, by public authority, until the resolution hereafter named and returned with this writ.

The law relating to dedication of easements has been so recently and fully discussed and determined in this court in *Trustees of M. E. Church* v. *Hoboken*, 4 *Vroom* 13, that no other authority need be cited for the principle that where the owner of urban property, who has laid it off in lots, with streets, avenues, and alleys intersecting the same, sells his lots with reference to a plot in which the same are so laid off, he adopts such map by a reference thereto, and his acts will amount to a dedication of the designated streets, avenues, and alleys to the public. The acts of dedication have been such, in this case, that the owners of the land through which this alleged streets runs from New Point road to Division street, among whom are the prosecutors in this action, could not, in the face of the descriptions in their deeds, deny the dedication. These deeds contain lots numbered in blocks, bounding in part on Wall street. The owners of these lots were thereby bound to the dedication, though the public were free to accept and assume the burden of repairing whenever their authorized agents might deem it expedient. The city was free, also, to disavow and reject it, if it would be useless or injurious.

The public are under no obligations to adopt all the streets and highways that an owner of land may put upon paper and picture upon maps, to please his own fancy and further his own interests. He may conclude himself thereby, but not the public. Even the occasional use by the latter, continued for several years, would not compel them to repair, or prevent

them from rejecting the dedication. To conclude the public, there should be such user as amounts to an appropriation, and some assertion of control and authority on their part.

This leads us to consider what has been done by public authority.

The charter of the city of Elizabeth of 1863, sections ninety-two and one hundred and fifteen, prescribes the method of opening streets, &c. The former requires the formal acts of laying out and opening streets to be done by ordinance.

Section one hundred and fifteen enacts that it shall be lawful for the city council, whenever they shall deem it expedient, to cause surveys to be made, and the same to be filed in the office of the clerk of the county of Union, and recorded in the book of record of roads, streets, and highways for the said county, of such roads, streets, highways, and alleys as they may think proper, which heretofore have been, or at any time hereafter may be opened by the owner or owners of any land over which the same run, and which have been, by such owner or owners dedicated to the public, by permitting the public to use the same, and by selling lots fronting thereon; and all such streets, roads, highways, and alleys, when surveyed, and such surveys filed and recorded as aforesaid, shall be deemed and taken to be public streets or highways, and shall be made, maintained and treated as such.

Section one hundred and sixteen is also important in this connection, for by it no streets, &c., laid out and opened since January 2d, 1843, or after the date of the charter, shall be recognized as public streets, unless the same have been or shall be laid out and opened under the direction of the city council, or have been or shall be surveyed, and such survey filed and recorded as aforesaid.

There is no mention of any ordinance in the one hundred and fifteenth section, and as the acceptance, by survey and recording, provided for in this section, pre-supposes a dedication by open, unequivocal action on the part of the owners, I see no necessity for more formal proceedings than a resolu-

tion, and none for notice to the owners. The acts of dedication and acceptance are concurrent and dependent, and there can be no claim for damages. The charge of the easement on the land of the owner is already made by the act of dedication; the survey and recording are but signifying the public acceptance of such easement, and put no additional burden on the land. An acceptance of a dedication may be shown by matter *in pais*, by parol, or by circumstance. This case is within section one hundred and fifteen, and the proceedings by survey, recording, and resolution of acceptance, have been completed. The two resolutions are dated September 29th, 1869, and December 1st, 1869, respectively. The first, directing the survey to be made of Wall street, from Sixth to Division street; the second, ordering the survey to be recorded, and that said Wall street, from Trumbull street to Division street, be declared to be and accepted as a public street of the city of Elizabeth.

It is, however, insisted that the city council had no power to pass these resolutions, or to open said street, or declare it a public street, for the reason that all the powers of the city, under that section, were taken away by the act entitled " An act to appoint commissioners to lay out streets, avenues, and squares in the city of Elizabeth," approved March 13th, 1867. *Laws of* 1867, *p.* 210.

This act gave the commissioners appointed in it the exclusive power to lay out streets, &c., and to close any streets, &c., or any part thereof, which had been theretofore laid out, and which had not been duly surveyed and recorded as public streets, &c., according to law, within the said city.

Section three requires the commissioners to make maps and file them in the office of the city clerk. And section five enacted that the maps, profiles, &c., of the said commissioners shall be final and conclusive, in respect to the city and the owners. The proviso of section six is, that the streets, &c., already lawfully laid out, shall not be altered, widened, or closed, until the payment or tender of payment of the damages assessed to the owners by reason thereof.

In the map made by the commissioners under this act, Wall street, from New Point street to Trumbull street, appears, but north of that nothing of it is shown, and there is no reference to it—not any assessment made for closing it.

There is no difficulty in construing this act with reference to this part of Wall street, because it is not a street lawfully laid out or opened, except by the mere act of dedication on the part of the owners above referred to.

The commissioners appear to have assumed that Wall street, below Trumbull, is a laid out street, and that north of Trumbull street there was no continuation. It is so shown on their map. The map designates three kinds of streets. Some, with light coloring, as streets laid out by the commissioners themselves; some, with closed black lines, as streets already opened or laid out; and some, with dotted lines, as streets to be closed. Within this map, a section of which is before us, there are no lines, nor any reference to show the part of Wall street, as it appears on the Wetmore map, between Trumbull street and Division street; while south of Trumbull street it is shown on the commissioners' map between closed black lines, as a street already opened or laid out. As there is no reference on the map to this part of Wall street in controversy, and no statement or report made by the commissioners concerning it, this portion stands as it did before the appointment of the commissioners and their action under the statute. Their silence cannot be construed into an adjudication for or against it. It still stands upon the dedication of the owners of the land, waiting for the acceptance of the city whenever it may choose to authorize it.

It remains to consider the effect of the act of March 31st, 1869, which repeals the act of March 13th, 1867, appointing these commissioners, and provides that the action of the said commissioners, and the streets, &c., and maps by them established and filed, shall be final and conclusive, unless vacated, altered, revised, or amended by the city council of the city of Elizabeth, *by resolution*—such power to be exercised only on application, in writing, by any person affected or ag-

grieved thereby, made before the 1st day of October then next, and proceedings to open or vacate must be made before that time by the council.

This repealing act must be construed to give the council entire control over the acts of the commissioners, upon application in writing, within the time specified.

August 18th, 1869, certain petitioners, representing themselves as property-owners on Wall street, and aggrieved by the acts of the commissioners in vacating that part of Wall street between Seventh and Division streets, applied, in writing, to have the same opened.

On reference to the committee on streets, a favorable report was made, and on September 29th, 1869, a resolution was passed by council to cause a survey to be made, to the end that said street may be accepted as one of the public streets of the city. November 24th, 1869, the city surveyor reported the survey. December 1st, 1869, the committee reported and the survey was accepted. On the same day a resolution was passed, setting forth that " *Whereas,* the owners of the land over which Wall street runs, from Trumbull street to Division street, have opened the same, and have dedicated the same to the public by permitting the public to use the same, and by selling lots fronting thereon, and the city surveyor has, under the direction of the city council, made a survey of the said Wall street—therefore *Resolved,* That the said survey be filed in the office of the clerk, &c., and said Wall street, from Trumbull street to Division street, be and is hereby declared to be accepted as a public street by the city of Elizabeth."

This resolution was passed by the unanimous vote of the council, and constituted a complete acceptance, if they had the authority.

There is nothing in the facts shown, or in the provisions of the charter or supplements, which prevented the city council from passing such a resolution. They are not concluded in this proceeding by the actions of the commissioners, but are within the proviso of the repealing act of March 31st,

1869, and also within their general authority under section one hundred and fifteen of the charter, which still remains in force.

This street cuts the blocks, as laid out on the commissioners' map, diagonally, and crosses the track of the prosecutors' railroad obliquely, at an angle of little less than twenty-seven degrees. This is objectionable, and such crossing is certainly more dangerous than one at right angles to the railroad; but this court will not interfere with the discretion of the city council of Elizabeth, where they are acting within their charter, and it is not apparent that the legislature could not grant such power as they have exercised. This is not the case of a street laid longitudinally upon a railroad, nor does it appear that the crossing is unnecessary and a dangerous obstruction to the prosecutors' right of travel. It is not, therefore, open to these objections urged against the action of the city council on the argument of the cause.

The subsequent action of the council in ordering the street to be paved has not been questioned, and appears to be regular. The proceedings, therefore, brought up by the writ are affirmed, but without costs.

Justices BEDLE and DALRIMPLE concurred.

AFFIRMED, 8 *Vr.* 432.
CITED *in Clark* v. *City of Elizabeth,* 8 *Vr.* 125.